Anderson, J.,
delivered the opinion of the court.
This is an appeal from decrees in two suits in which the appellant was plaintiff, and, in one, the administrator of Eli Davis, deceased, and the sureties of said Davis, in his administration on the estate of Jacob Groseclose, were defendants; and in the other the said Eli Davis’ administrator, and his creditors were defendants.
The first suit was brought to recover the plaintiff’s claim against the administrator of Jacob Groseclose, her first husband, from his sureties—the estate of Davis being insolvent. This suit was dismissed by the decree of 23d December, 1878; but without prejudice to the right of the plaintiff to seek the satisfacton of her demand against the estaté of *99 Eli Davis, which may be undistributed, but not against the sureties of said Davis as administrator of Jacob Groseclose.
The second suit was afterwards brought against Eli Davis’ adm’r, and his creditors to subject a fund which was in the hands of the receiver, I. J. Leftwich, for the satisfaction of her claim. This suit was also dismissed by the decree of 16th of March, 1878, on final hearing. And the appeal is from those two decrees.
When the appellant’s bill in the first suit was filed, there was a suit depending in the same court, in which Joseph Meeks, guardian, &c., was plaintiff, who sued for himself and all other creditors of Eli Davis, deceased, who would come in and participate in paying the costs of the suit; and Rufus Brown, surviving administrator, and the heirs of Eli Davis, deceased, were defendants. The appellant filed her petition to be made a defendant in this suit, in which she sets up her claim against Eli Davis as administrator of her deceased son, George Groseclose, and refers to a decree of the court which establishes her claim as exhibit A in the cause, but which I have not been able to find in the record. But it is allowed by Commissioner Holbrook in his report, as established by a decree of the court in the suit of Eli Groseclose and als. vs. Davis’ adm’r, entered August 10, 1859, and the same was paid her out of the fund then in possession of the court. The plaintiff in her bill says those two suits were consolidated and heard together. But I do not find that it so appears in the record. And the claim in the Eli Groseclose suit referred to by the court, it seems, was entered years before the Meeks’ suit was brought. But this is the only claim which the appellant made in that suit against the estate of Eli Davis. She set up no claim against Eli Davis as administrator of her first husband, Jacob Groseclose. If she had done so and proved it to be just, and that it was fiduciary, it would have been put with the first class debts, *100 and the most, if not the whole of it would have been paid out of the fund then under the control and in the power the court; aud if not fiduciary, would have been paid pro rata with the second class creditors. But she made no such claim, although she was a party to the suit. Her Pet^^on was by order of the.court on the 11th of June, 1872.
It was not until April, 1875, that she filed her bill seeking satisfaction from the sureties of Eli Davis. But at that time there had been no final decree in the Meeks ■creditors’ suit. It was still depending and undetermined, and the final decree was not pronounced until the 18th of September, 1875. If, instead of bringing that suit, she had then, or any time before the final decree, filed her petition, setting up the claim of which she is now seeking satisfaction, it would have been in time to have saved at least a part of her debt. Mrs. E. G. Gibboney, executrix ■of Robert Gibboney, deceased, did not prove her husband’s debt of $5,421.76 until September 17th, 1875, only one day before the final decree was entered, and it was allowed. But the appellant, who knew of that suit—for she was a party to it—for some reason that is unexplainéd, preferred to pursue the sureties of Davis for her debt in a separate and independent suit, rather than to seek satisfaction out of the estate of Davis, the principal in a suit already depending, and in which she was a party.
Having made this statement of the case, we will first inquire whether there is error in the decree of December, 1876? That involves the question as to the liability of the sureties.
It is shown by the testimony of Mrs. Ann Tilson herself that she received the note of Eli Davis, the administrator-, for the balance due her from the estate. She had ¡received before, in property which she had purchased at the sale, to the amount of $943.28. She thinks, and seems to be confident, that the writing was signed by him *101 as administrator. Mr. Davis was her brother, and was at the time a man of large possessions, was regarded as a wealthy naan, and had very great credit.
There is evidence strongly tending to prove that the bond or note was given in anticipation of her second marriage ; that this inconsiderable sum might be secured to her use during her life, and not be reduced to the marital rights of a second husband by her contemplated marriage, and after her death to go to the children of Jacob Groseclose, from whom it was derived. And this view receives support and countenance from her own testimony. In answer to the question, was the note spoken of turned over to her second husband after their marriage? she answers, “It was not turned over by me; I know that he was not to have it.”
Again she says, speaking of the note, “ I saw it frequently while I had it. I kept it in a secret place, and examined it frequently while it was there, but finally missed it, but don’t know where it went.” W. V. B. Til-son, who, it was mentioned at the bar, is administrator of Ransom Tilson, his father, testifies that he found a note among his father’s papers signedaby Eli Davis; says his recollection is it was for $810. Does not remember whether the note was payable to Ann Groseclose, or her heirs. Gave the note to Mr. Gilmore to collect the interest on it, which he understood was coming to his father during his life. Don’t remember whether it stated it was for her distributive share in Jacob Groseclose’s estate or not. Would not be positive it was not. Mr. Gilmore remembers Mr. Tilson giving him the note to place in the hands of a commissioner who was taking an account in some case in which Eli Davis’ estate was before the court in Wythe for settlement, so that his father’s estate could get the benefit of the interest on the note, he claiming that his father’s ectate was entitled to the interest on it whilst he lived. He gave the note to Jos. W. Caldwell, understanding that he *102 was the commissioner, and has never seen it since. If the note had been executed to Ann Groseclose, and her husband had reduced it to possession, he would have been entitled to collect the principal as well as the interest, unless there was some stipulation on the face of the note that would make it uncollectible in the lifetime of his wife, or indicating that the principal was not due to her. His claiming the right to collect the interest only, and that limited to his lifetime, would imply that his wife was not entitled to the principal, but only to the annual interest. But this inquiry need not be pressed further. If this hypothesis should be received, it would establish a novation and conversion of the debt, and the sureties of the admintrator would not be liable for it. It would have become the individual debt of Eli Davis, and he alone would have been liable for it; and there is very much in the facts and circumstances proved, which need not be detailed in this opinion, tending to show that Ann Groseclose, the sister of Eli Davis, took the writing in question from him as a permanent security for the balance due her from the personal estate of her first husband, and looked to him alone for payment. But if this be not so, it was a settlement of her interest in the estate, at least pro tanto, and her right of action accrued from the moment said note was delivered to her. And the evidence as to the amount of the note shows that it was for a larger amount than was actually due Mrs. Groseclose, as shown by the settlement of the commissioner. The facts proved by the appellant herself shows that the note was executed to her whilst a feme sole, and her subsequent marriage could not create a disability which would prevent the running of the statute of limitations. That a note was executed by Davis to the appellant before her second marriage, and whilst she was a feme sole, for a larger amount than was afterwards shown by the commissioner’s settlement was due her from the estate of Jacob Groseclose; and that she accepted said *103 note, and held it in her own custody for many years after her second marriage, and that it afterwards got into the possession of her second husband, and was found - amongst his papers after his death, and that she regarded her interest in the estate as safely invested and secured by said note, long after it was received by her, are facts in the cause, well established by the testimony. If said note was given and received as a satisfaction in full of the appellant’s interest in the estate, the sureties were clearly discharged by it from their liability as sureties. And if it was not so given and received, but was intended only to be an acknowledgment by the administrator that so much was due her from the estate, it was a settlement at least to the amount of the note; and from the moment of its execution and delivery to the appellant, right of action accrued to her thereon, and more than ten years having elapsed before she brought her suit, his sureties are discharged from their liabilities by the statute of limitations on which they relied °, and in whatever light said transaction may be viewed, the sureties were relieved from their liability on the administration bond, and there is no error in the decree of 1876.
We have next to inquire whether there is error in the decree of March 16th, 1878, for which it should be reversed? This involves the question whether the plaintiff in this suit was concluded and estopped by the final decreee in the Meeks’ creditor suit,-to which she was a party defendant?
In the Duchess of Kingston’s case, 2 Smith’s Leading Cases, top p. 623, marg. 587, it is said, The rule laid down in the celebrated judgment of De Grey, C. J., is, that the judgment is conclusive between the same parties. And again top p. 624, it is held that the record of a verdict followed by a judgment in a suit inter partes will estop, first parties, second, privies. It is well established law that a final decree in chancery is as conclusive as a *104 judgment at law. A verdict and judgment of a conrt of record or a decree in a court of chancery puts an to all points decided between the parties to the suij;. There is and ought to be no difference between a verdict and judgment in a court of law and a decree in a court of equity. They both stand on the same footing and may be offered in evidence under the same limitations;, and it would be difficult to assign a reason why it should be otherwise. There is nothing anomalous or unusual in setting up a former adjudication as an estoppel to an action for equitable relief. The rule is a beneficial one, and it is a matter in which it is said the public has an interest as well as the parties, that there should be an end to litigation. Freeman on Judgments (2d edi.), § 248—citing Sibbald’s case, 12 Pet. R. 488; Kibry v. Murphy, 26 Penn. State R. 78; Maguire v. Tyler, 40 Missouri R. 406; Smith v. Kernochen, 7 How. U. S. R. 198; Hopkins v. Lee, 6 Wheat. R. 100; Marsh v. Burroughs, 19 Amer. L. R. 718; San Francisco v. Spring Valley W. W., 39 Calif. R. 473; Crowdson v. Leonard, 4 Cranch’s R. 436; Lore v. Truman, 10 Ohio St. R. 45 ; and Wales v. Lyon, 2 Mich. R. 276, and numerous other cases. The case of Jones, &c. v. Myrick's ex’ors and Myrick's ex’ors v. Epes & als., 8 Gratt. 179, is a decision of our own court, and settles the law of this state to be as it is declared to be by decisions of other courts in the cases cited.
That case strikingly resembles this. Both suits were in the same court, and in both of them creditors were seeking enforcement of their respective liens against the property of a common debtor. The suit of Myrick's ex’ors v. Epes & others was brought first, on the 21st of June, 1828, and that of Jones v. Myrick's ex’ors, was brought on the 27th of August of the same year. Myrick was plaintiff in the-former, and defendant in the latter, and answered the bill of plaintiffs. The Epes suit, though brought last, was decided first. There was a final decree in it on the 11th. *105 of April, 1834. The appellate court was of opinion that My rick’s judgment lien on the proceeds of the sale of the Dinwiddie land, was paramount to the lien of the schedule creditors, if he had asserted it in the Jones v. Myriek’s ex’ors’ suit, before there was a final decree in that suit—if he had asserted it in that suit, to which he was a party, before the final decree, while the fund was in the hands of the sheriff, or otherwise in the control of the court. But Judge Baldwin, speaking for the whole court, said, “It was too late, however, at the hearing of the present suit in 1845, to subject the proceeds of the sheriff’s sale of the Dinwiddie land, which proceeds were recovered by the schedule creditors by the decree rendered in 1834, in the suit brought by Epes, &c. That decree is an insuperable bar to the pretension now made by the executors of My-rick, who was a party in that suit, to a recovery against the schedule creditors of the money paid to them, under the authority and by the direction of the decree of 1834. It was a decree not only upon the same matter, the apparent paramount lien and title of the schedule creditors in regard to the Dinwiddie land, which carried with it the negation of a paramount lien or title in all other persons; but it was a recovery of the identical subject, the proceeds of the sale of that land made by the sheriff. Nor was it the less decisive and conclusive (the court further says) that the money was not in the hands of Myrick, but in the hands of the sheriff, who held it subject to the control and decision of the court (of course until disposed of by final decree) ; nor that Myrick in his answer did not deny the lien or title asserted in the bill, and asserted no lien or title in himself; nor that the present suit was then pending, and the first brought, for it is not the institution of the suit, but the judgment or decree therein, which concludes the rights of the parties. The pendency of the present suit, however, serves to show, if that were material, that My-rick was not ignorant of his own paramount lien upon the *106 Dinwiddie land, but chose not to insist upon it, proposing and desiring, as would seem from his own bill, to obtain satisfaction of his larger judgment out of his debtor’s other lands.”
We have recited so much of the opinion of Judge Baldwin that the principle decided by that case might be accurately apprehended, and because his remarks are so apposite to the case in hand, that they might be applied to it by putting the name of the appellant in the place of “ Myrick,” and receiver or commissioner in the place of “ sheriff,” and Davis’ lands in the place of “ Dinwiddie land,” except that the Meeks’ creditor suit had been determined by a final decree and stricken from the docket long before the second suit was instituted by the appellant, Mrs. Tilson, which is the only suit by which she sought to subject the proceeds of the sales of the Davis lands to the satisfaction of her debt—her first suit, as we have seen, being intended to recover the amount of her debt from Davis’ sureties. The Meeks’ creditor suit, in which she was a party, was determined by a final decree on the 18th of September, 1875, and stricken from the docket. And her bill to subject the fund appropriated and disposed of by that final decree was not filed until the February rules, 1877. Like Myrick, “ by her wilful waiver or gross neglect,” she submitted to the pretensions of other creditors of Davis, and so allowed the fund to be appropriated for their benefit, in the language of Judge Baldwin, “by an unreversed and irreversible decree.” She has lost her debt by failing to pursue the plain and obvious remedy by which it might have been secured, and this court has not the power to give her relief, however they would be inclined to it if it were in' their power. But to do so would be to divest rights which have been long vested, and to overturn the well established principles of law and equity. The decrees of the court below must therefore be affirmed.
Decree affirmed.